**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000523
24-FEB-2012
08:21 AM**

NO. CAAP-11-0000523

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF N CHILDREN: XN, SN1, EN, SN2

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 09-12206)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Father-Appellant (Father) and Mother-Cross Appellant (Mother) appeal from the Order Terminating Parental Rights, entered on July 15, 2011 in the Family Court of the First Circuit (family court).[1]

On appeal, Father challenges Findings of Fact (Finding) Nos. 37, 43, 58, 59, 64, 73, 77, 81, 82, 83, 84, 90, 91, and 96 and Conclusions of Law (Conclusion) Nos. 9, 10, and 12. Although Father challenges numerous Findings and Conclusions, he only provides specific arguments as to Findings Nos. 43 and 73. In addition, Father argues that (1) the family court erred by finding that Father was unwilling and unable to provide a safe family home, now or in the reasonably foreseeable future, (2) the family court abused its discretion by terminating his parental rights because there was no permanent placement identified for SN1, (3) the family court abused its discretion by denying his

---

[1] The Honorable Bode A. Uale presided.

Motion for an Immediate Review, filed on July 1, 2011, without holding a hearing, and (4) Petitioner-Appellee State of Hawai'i, Department of Human Services (DHS) failed to provide him with reasonable efforts to reunify with his children[2] XN, SN1, EN, and SN2 (collectively "Children") by denying him the opportunity to participate in "hands-on" parenting.

In her cross appeal, Mother challenges Findings Nos. 29, 31, 37, 41, 42, 43, 51, 58, 59, 64, 65, 67, 68, 70, 71, 78, 79, 80, 90, 91, 92, 93, 95, and 97 and Conclusions Nos. 9, 10, and 12. Although Mother challenges specific Findings and Conclusions in her points on appeal, she does not provide specific arguments as to each challenged Finding or Conclusion. Therefore, her challenge to these findings are deemed abandoned. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).

Instead, Mother argues that "there are two basic arguments that address each point of error." The first is that DHS failed to prove by clear and convincing evidence that Mother was unwilling and unable to provide a safe family home, now or in the reasonably foreseeable future. The second is that the family court abused its discretion by denying her Motions for Immediate Review because DHS failed to provide reasonable efforts to reunify Mother by not providing visitation and updated information regarding the Children.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father and Mother's points of error as follows:

**Father's Appeal.**

(1) Father argues that the family court erred when it found he was unwilling and unable to provide a safe family home. With the exception of Findings Nos. 43 and 73, Father does not

_____

[2]     In October 2003, Father and Mother adopted and were given legal custody of Children. CN, born in August 1992, has since reached the age of majority and is not a subject of this appeal.

otherwise specify to which challenged Findings his various arguments apply. Rather, Father notes that,

> [t]o the extent permitted, each of the arguments, below, which address more than one of the points of error, is deemed to address each of the points of error to which it would reasonably apply. For example, FOF#37 deals with the June 23, 3011 Order and Decision which granted the Department's Motion to Terminate Parental Rights. Therefore, the paragraph dealing with FOF#37 should be deemed to also address the specific point of error dealing with the June 23, 2011 Order and Decision.

We do not agree that this method of reference is sufficiently specific to alert this court to the errors Father's arguments relate. As Father fails to specify, with the exception of Findings Nos. 43 and 73, to which of his designated Findings he is referring in his argument, we will not speculate as to the connection between his points and arguments. As a result, we deem his challenge thereto to be abandoned. HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.") See also Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 478, 164 P.3d 696, 736 (2007) ("an appellate court is not obliged to address matters for which the appellant has failed to present discernible arguments").

Father argues that Finding No. 43 ("The Children have a long history of being physically abused by their biological and adoptive parents.") is partially wrong because, as it pertains to him, there is no evidence that Father physically abused any of the Children. We agree. However, such error is harmless because, as Father points out, the basis for the termination of his parental rights was that he presented "a threat of abuse" for being non-protective of the Children from Mother's physical abuse. The unchallenged Findings supported this conclusion by the family court. For example, the family court found:

3

53.  The Children are fearful of returning home to Mother and Father.

54.  The Children do not want to have visits with Mother and Father.

. . . .

75.  Father is a passive caretaker who is infrequently home and defers to Mother for the caretaking of the Children.

76.  Father has not demonstrated protective capability nor has he stepped in to assure the Children's academic, psychological or psychiatric needs are met.

We are bound by the unchallenged Findings.  In re Guardianship of Doe, 119 Hawai'i 234, 235 n.4, 195 P.3d 701, 703 n.4 (App. 2008). Although Father cites to Finding No. 73[3] in his argument, he does not appear to be arguing it is clearly erroneous, but rather relies on this Finding to support his argument that the family court was wrong in ruling he was not willing or able to provide a safe family home.

With regard to his other arguments challenging the family court's decision that he was not willing or able to provide a safe family home, Father points to his prior absence from the home explaining his past inability to be protective of the Children, DHS's recognition that he was willing to provide a safe family home, his indecision regarding whether he would be willing to leave Mother so that DHS would be able to assess his ability to provide a safe home for Children, and the lack of visitation -- although XN at one time expressed willingness to visit with Father and Mother -- as establishing the lack of evidence supporting the family court's decision.

However, Father testified that he did not believe the allegations against Mother regarding physical abuse and specifically that Mother pinched and choked SN2.  Such a denial is inconsistent with his acknowledgment of his failure to protect

---

[3]     Finding No. 73 reads, "Father has completed parenting classes. However, the Department is unable to assess Father's parenting skills because no visits with the Children have occurred."

the Children from Mother's physical abuse and supports the conclusion that Father could not presently provide a safe family home.

Father was also aware that since 2001, there were at least six reports of abuse to DHS resulting in services being provided in two of those cases.[4] The repeated intervention by DHS coupled with Father's past failure to protect Children and present refusal to acknowledge any harm supports the family court's determination that it is not likely that Father could provide a safe home in the foreseeable future, even with the assistance of a service plan in a reasonable amount of time.

(2) Although Father points to the lack of a suggested permanent placement for SN1 in the permanent plan as a reason the termination of his parental rights was error, it is not relevant to the issue of whether Father could provide a safe family home. A permanent plan is not required to state the placement of a child if a parent's parental rights are terminated. Hawaii

---

[4]      Father does not dispute the following Findings:

       48.   In 2005, the Department intervened due to physical abuse by Mother and threat of physical abuse by [Father's brother], who frequented the family home. Services were offered and the Department closed its case in 2006.

       49.   In 2006 and 2007, Nanakuli Elementary and Intermediate/High School made numerous reports to the Department regarding physical abuse and neglect issues of the Children by Mother and [Father's brother]. The Children reported the harm by Mother and [Father's brother] but later recanted because of the fear of what would happen when they got home.

       50.   In 2008, the Department again intervened due to physical abuse by Mother. Services were offered and Department closed its case in early 2009.

       51.   In April 2009, [SN2] was pinched on the neck and earlobe by Mother and choked by [Father's brother]. Mother also grabbed [SN2] by the neck and slammed her head into the wall. The Children were also physically abused by [Father's brother].

Revised Statutes (HRS) § 587-27 (2006).[5] After an existing service plan is terminated and foster custody is revoked, the family court must award permanent custody to an appropriate authorized agency and order the implementation of a permanent plan whereby the child will be either adopted, placed under guardianship, or remain in permanent custody until adopted, placed under a guardianship, or reaches the age of majority. HRS § 587-73(b) (2006).[6] Therefore, Father's argument regarding a lack of placement for SN1 prior to the termination of his parental rights is without merit.

(3) Father claims that the family court abused its discretion by denying his July 1, 2011 Motion for an Immediate Review Hearing. The motion requested that the case be re-opened, stated that the evidentiary portion of the contested hearing had concluded on April 28, 2011, and argued that, "[s]ince that date, [Father's counsel] received additional information/evidence from one of Father's service providers that may impact the Court's ruling/decision in this matter." Father's counsel stated that copies of the recently-received information were provided to the other parties but not provided to the court "so the Court may first rule on the instant motion."

During a hearing on the motion, Father's counsel stated that

> the reason I filed the motion for immediate review is because I received something from [Father's] therapist who was doing conjoint sessions with [SN1]. . . . and I was hoping that the court would give us additional time to look at that issue that I -- that I brought up that there is no permanent placement for [SN1]. She's in conjoint sessions with [Father]. And if the court would consider allowing that to continue. Thank you.

As there is no copy of a document from Father's service provider in the record on appeal, Father has failed to provide an adequate record to enable this court to review his claim that the

_____

[5]     Pursuant to Act 135, effective September 1, 2010, HRS Chapter 587 was repealed and replaced by HRS Chapter 587A. 2010 Haw. Sess. Laws Act 135, § 8 at 314.

[6]     See footnote 5, supra.

document should have been considered. In addition, Father's counsel stated that he filed the motion based on the lack of permanent placement for SN1 and to continue SN1's conjoint sessions with Father. As explained above, the issue of permanent placement was not relevant to determining whether Father could provide a safe family home and, in any event, the family court ordered that conjoint sessions continue. Therefore, there was no reason for the family court to re-open the case and the family court did not abuse its discretion by denying Father's July 1, 2011 Motion for an Immediate Review Hearing.

(4) Father argues DHS failed to afford him with reasonable efforts to reunify with the Children and points to its failure to use the conjoint therapeutic sessions he had with SN1 as opportunities for "hands-on" parenting. However, Father did not object to the service plan and provides no basis for his assertion that DHS "should have" altered or redesigned these therapeutic sessions to add parenting services. In any event, the hands-on parenting services were intended to occur in the home and not in a clinical context. The opportunity to provide in-home services did not arise because the Children were not, as of the time of trial, ready to be reunited with Father, even on such a limited basis.[7] Father has failed to show the family court erred in this regard as well.

**Mother's Appeal.**

(1) In support of her first argument that DHS failed to carry their burden of proof that Mother was not willing or able to provide a safe family home for Children, Mother asserts that, although she completed all of the services offered by DHS, DHS was unable to assess her parenting skills without Mother's

---

[7] XN and SN2's therapist testified at trial that, although XN did at one time express interest in seeing her Father and Mother, that she had since changed her mind. This therapist opined that if either child were returned, it would be harmful to them. EN's social worker testified that EN told her he did not want to return home. The Children's DHS case manager testified that SN1 was "indifferent" to visiting with Father and Mother.

home visits with the Children. Mother fails to explain why this supports her argument the evidence presented was insufficient.

Mother also argues that testimony to the effect that Mother had failed to acknowledge she had harmed the Children was undermined by testimony that she was not asked about this issue. However, there was also evidence, in the form of a December 6, 2009 letter from Mother's therapist, reporting that Mother "continues to deny that she physically abused the children. She added that she cannot admit or take responsibility for something she did not do." This court will not reweigh evidence or second guess the credibility determinations of the trial court. State v. Martinez, 101 Hawai'i 332, 340, 68 P.3d 606, 614 (2003) ("But '[i]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact.'").

More importantly, the record supports the family court's conclusion that there was clear and convincing evidence that Mother was not presently willing and able to provide the Children with a safe family home, even with the assistance of a service plan and that it was not reasonably foreseeable that Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time. Mother does not dispute Findings Nos. 48-50, 53, and 57 which note the various DHS interventions between 2005 and 2008, that the Children were fearful of returning to the family home and "receive individual therapy due to the psychological trauma caused by the physical abuse." Mother has not had in-home visits with Children and consequently has not demonstrated that the services she has received have changed her behavior. The family court's conclusion is supported by the evidence in the record.

Mother's second argument, that DHS failed to provide reasonable efforts to reunify Mother with the Children is not supported by the record. The family court ordered visitation with Mother if each child's therapist thought it was appropriate.

Although Mother points to two 2009 letters indicating that CN and XN stated that they wanted to visit with Mother and Father, the Children's DHS case manager stated that CN changed his mind about returning home several times and XN's therapist testified that from May to November 2009, XN stated that she wanted to see her Mother and Father again but she has since changed her mind. In addition, there is nothing in the record indicating that the Children's therapists recommended that the Children visit with Mother.

Therefore,

IT IS HEREBY ORDERED that the Order Terminating Parental Rights, entered on July 15, 2011 in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, February 24, 2012.

On the briefs:

Tae Chin Kim,
for Mother-Cross Appellant.

Thomas A.K. Haia,
for Father-Appellant.

Mary Anne Magnier and
Eric J. Alabanza,
Deputy Attorneys General,
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge

9